UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

VELLANO BROS., INC,

Plaintiff

v.

HANOVER INSURANCE COMPANY,

Defendant.

CA 06 546 T

# COMPLAINT

1. This is an action by the plaintiff, Vellano Bros., Inc. ("Vellano") to enforce a common law payment bond issued by Hanover Insurance Company ("Surety") as surety on behalf of the contractor South Shore Utility Contractors, Inc. ("South Shore"), and for punitive damages under Massachusetts General Laws Ch. 93A.

## Parties

2. Plaintiff is a corporation duly organized under the laws of the state of New York, authorized to conduct business in the State of Rhode Island, with its principal place of business at 7 Hemlock St., Latham, NY.

3. Defendant is a New Hampshire corporation with its principal place of business at 400 Lincoln Street, Worcester, Massachusetts, and was authorized at all times material to this action to execute surety bonds in the State of Rhode Island.

Jurisdiction and Venue

4. This Court has jurisdiction over the subject matter of this case under 28 U.S.C. § 1332, as the plaintiff is a citizen of New York, the defendant is a citizen of New Hampshire and more than $75,000, exclusive of interest and costs, is in dispute.

5. Venue is proper in this District under 28 U.S.C. § 1391(a) because the sole basis for subject matter jurisdiction is diversity of citizenship and the defendant is deemed to reside in this District, by virtue of 28 U.S.C. § 1391(c), as it is a corporation subject to personal jurisdiction in this District. In addition, the bond issued by Defendant which is the subject of this action contains a venue provision requiring that any suit or action brought by a claimant under the bond be brought in a court of competent jurisdiction in the location in which the work covered by the bond is located, which is Rhode Island.

General Allegations

6. South Shore entered into a contract with O. Ahlborg & Sons, Inc., which in turn had entered into a contract with the Pawtucket Water Supply Board to procure or perform work or supply materials in connection with a water treatment facility known as the "Pawtucket Water Treatment Facility" project (the "Project"). South Shore as principal and the Surety as surety executed a payment bond for the Project (the "Bond"). A true and accurate copy of the Bond is attached hereto as Exhibit A.

7. In 2004 and through December, 2005, South Shore ordered pipe and other construction supplies (the "Materials") from Vellano and Vellano sold and delivered the Materials to South Shore.

8. The terms of sale required that South Shore pay within thirty (30) days, imposed a service charge of 1½% per month thereafter on invoices thirty (30) days past due, and obligated

South Shore to pay attorneys' fees and costs for collection. A true copy of the terms governing the sales from Vellano to South Shore is attached hereto as Exhibit B.

9. Of the Materials sold by Vellano to South Shore, at least $755,724.47 worth was purchased for, delivered to and/or incorporated into the Project, but for which South Shore has not paid Vellano.

10. Vellano is not aware of any defense on the part of South Shore to its liability for these Materials in the amount of $755,724.47.

11. The last of such Materials was furnished on or about December 20, 2005.

12. Within 90 days of its last furnishing of Materials to or for the Project, on or about March 3, 2006, Vellano gave notice of its claim under the Bond to South Shore, the Surety, O. Ahlborg & Sons, Inc. (which is named in the Bond as Owner), and to Earth Tech, Inc., (which O. Ahlborg & Sons, Inc., has identified as a party to its contract for the Project). Copies of such notices are attached hereto as Exhibit C.

13. All conditions precedent to the maintenance of this action have been performed.

14. By letter dated April 19, 2006, the Surety issued a formal denial of the claim. A true copy of that letter is attached hereto as Exhibit D.

15. Subsequent letters from the Surety's attorney indicated that the Surety's only dispute is with the amount of the claim, based upon an argument that certain payments that South Shore made to Vellano should have been applied to invoices on the Pawtucket Project rather than to other invoices. Hanover's position is not supported by applicable law or the facts.

16. The result of the Surety's application of payments argument, as stated in a letter from the Surety's counsel of July 25, 2006, is that "Hanover is valuing the claim at

$401,145.36." That amount only reflects the principal amounts the Surety recognizes as owed, and does not include any service charges that have accrued.

17. The fact that a portion of the claim is disputed does not relieve the Surety of its obligation to make prompt payment of the undisputed portion of the claim. Vellano has demanded immediate, unconditional payment of the $401,145.36 undisputed amount but the Surety has failed and refused to make payment of that undisputed amount.

18. To date, the Surety has failed and refused to pay Vellano, despite repeated demands, any part of the unpaid balance of $755,724.47 due and owing for the above-referenced Materials under the terms of the invoices.

## COUNT ONE

(Enforcement of Payment Bond)

19. Vellano repeats and realleges herein the allegations contained in paragraph 1 through 18 above as if set forth in full herein.

20. Vellano performed its obligations by delivering the Materials for the Pawtucket Water Treatment Facility Project, but South Shore has failed and neglected to pay Vellano $755,724.47 of the Materials purchased for, delivered to and/or incorporated into the Project, which Materials, upon information and belief, have both been accepted and incorporated by South Shore and the Project owner. The sum of $755,724.47 represents the fair and reasonable value of the Materials supplied to South Shore for the Project by Vellano for which payment has not been received.

21. Interest and service charges have accrued with respect to the Project Materials in accordance with the terms of the contract in an amount to be determined through March 20, 2006, and since that date have continue to accrue at the rate of $372.69 per day.

COUNT TWO
Mass. G.L. Chapter 93A

22. Vellano repeats and realleges herein the allegations contained in paragraphs 1 through 21 above.

23. Vellano notified the Surety of its claim in March, 2006. Since that time, Vellano has supplied the Surety and its consultants, RSM McGladrey, with all information requested of it regarding the claim.

24. The Surety has had ample time to investigate the claim and has admitted liability for the sum of $401,145.36.

25. The Surety's liability under its bond for the amount of $401,145.36 has become reasonably clear, and Vellano has been compelled to file suit in order to recover on its claims.

26. The Surety's failure to pay the claim and its other conduct alleged above constitute unfair and deceptive trade practices and willful and knowing violations of Mass. G.L c. 93A.

27. The acts and omissions of the Surety complained of occurred primarily and substantially in Massachusetts.

28. As a result of the Surety's violation of Chapter 93A, Vellano has been damaged and has incurred attorneys' fees and expense

WHEREFORE, Vellano prays that this Court:

(a) Enter judgment on Count I in favor of Vellano Bros., Inc., against Hanover Insurance Company for money damages, interest, costs and attorneys' fees as provided for under the Bond and under the terms of its contract with South Shore, including interest through the date of this Complaint as alleged in Paragraph 21 above, and accruing thereafter at the daily rate alleged in interest in Paragraph 21;

(b) Enter judgment on Count II in favor of Vellano Bros., Inc., against Hanover Insurance Company for such double or treble damages to which the Court may determine Vellano is entitled, interest, costs and attorneys' fees, including interest through the date of this Complaint as alleged in Paragraph 21 above, and accruing thereafter at the daily rate alleged in interest in Paragraph 21; and

(c) Award Vellano any and all other relief deemed just and proper by the Court.

Respectfully submitted,

**VELLANO BROS., INC.**
By its attorneys,

/s/ William E. O'Gara
William E. O'Gara, Esq.
Pannone Lopes Devereaux LLC
1800 Financial Plaza
Providence, RI 02903
(401) 824-5117
Fax: (401) 824-5123

Of Counsel:
Deborah S. Griffin, BBO #211460
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
Tel: (617) 523-2700
Fax: (617) 523-6850

Dated: December __, 2006

# EXHIBIT A

# THE AMERICAN INSTITUTE OF ARCHITECTS

*AIA Document A312*

# Payment Bond

**Bond # BCN1742235**

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):
**South Shore Utility Contractors Inc.**
**P.O. Box 19610**
**Johnston, Rhode Island 02919**

SURETY (Name and Principal Place of Business):
**The Hanover Insurance Company**
**440 Lincoln Street**
**Worcester, Massachusetts 01653**

OWNER (Name and Address):
**O. Ahlborg & Sons, Inc.**
**49 Melter St**
**Cranston, Rhode Island 02920**

CONSTRUCTION CONTRACT
Date: **05/12/2005**
Amount: **ONE MILLION TWO HUNDRED FIFTY-FOUR THOUSAND THREE HUNDRED TWENTY AND NO/100THS Dollars**
Description (Name and Location): **Pawtucket Water Treatment Facility-Package No. 2A,**

BOND
Date (Not earlier than Construction Contract Date): **May 12, 2005**
Amount: **ONE MILLION TWO HUNDRED FIFTY-FOUR THOUSAND THREE HUNDRED TWENTY AND NO/100THS Dollars (**
Modifications to this Bond: ☐ None ☒ See Page 6

CONTRACTOR AS PRINCIPAL
Company: (Corporate Seal)
**South Shore Utility Contractors Inc.**
Signature:
Name and Title:

SURETY
Company: (Corporate Seal)
**The Hanover Insurance Company**
Signature:
Name and Title: **Adam W. DeSanctis**
**Attorney-In-Fact**

(Any additional signatures appear on page 6)

*(FOR INFORMATION ONLY—Name, Address and Telephone)*

AGENT or BROKER:
**DeSanctis Insurance Agency, Inc.**
**36 Cummings Park**
**Woburn, MA 01801**
**(781) 935-8480**

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

1 The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

2 With respect to the Owner, this obligation shall be null and void if the Contractor:

2.1 Promptly makes payment, directly or indirectly, for all sums due Claimants, and

2.2 Defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit is for the payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address described in Paragraph 12) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, and provided there is no Owner Default.

3 With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

4 The Surety shall have no obligation to Claimants under this Bond until:

4.1 Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

4.2 Claimants who do not have a direct contract with the Contractor:

.1 Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and

.2 Have either received a rejection in whole or in part from the Contractor, or not received within 30 days of furnishing the above notice any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly; and

.3 Not having been paid within the above 30 days, have sent a written notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

5 If a notice required by Paragraph 4 is given by the Owner to the Contractor or to the Surety, that is sufficient compliance.

6 When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

6.1 Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

6.2 Pay or arrange for payment of any undisputed amounts.

7 The Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

8 Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any Construction Performance Bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and the Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

9 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

10 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

11 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

12 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page. Actual receipt of notice by Surety, the Owner or the Contractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the signature page.

13 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this



Aotig
March 3 2008

Bond shall be construed as a statutory bond and not as a common law bond.

14 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

15 DEFINITIONS

15.1 Claimant: An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

15.2 Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

15.3 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

**MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:**

See Attached Terrorism Rider

Company: (Corporate Seal)

Signature: ______________________
Name and Title:
Address:

Company: (Corporate Seal)

Signature: ______________________
Name and Title:
Address:

ALLMERICA FINANCIAL®
CITIZENS INSURANCE®
HANOVER INSURANCE®

# Policyholder Disclosure
# Notice of Terrorism Insurance Coverage

The Terrorism Risk Insurance Act of 2002 established a program within the Department of the Treasury, under which the Federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. The Act provides that, to be certified, an act of terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest to coerce the government or population of the United States. The Federal share of compensation under this Program is equal to 90% of covered insured losses in excess of the deductible paid by us under this Program.

In accordance with the Terrorism Risk Insurance Act of 2002, we are required to offer you coverage for losses resulting from an act of terrorism that is certified under the Federal program. The law also requires us to disclose to you the premium charge associated with the expanded terrorism coverage. At this time we have waived any premium associated with this program for our policyholders. So, the cost under your policy is zero.

Any questions concerning your policy and this coverage should be directed to your agent. Thank you for doing business with our companies.

**Certified Copy Void Without Allmerica Financial Watermark**

**This Power of Attorney may not be used to execute any bond with an inception date after July 1, 2007**

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

*POWERS OF ATTORNEY*
*CERTIFIED COPY*

KNOW ALL MEN BY THESE PRESENTS: That THE HANOVER INSURANCE COMPANY and MASSACHUSETTS BAY INSURANCE COMPANY, both being corporations organized and existing under the laws of the State of New Hampshire, and CITIZENS INSURANCE COMPANY OF AMERICA, a corporation organized and existing under the laws of the State of Michigan, do hereby constitute and appoint
**Michael F. Carney, L. Robert DeSanctis, Adam W. DeSanctis, Christine B. Dean, David A Scotlatta, Gregory D. Juwa, Michael T. Gilbert, James J. Axon, Bryan D. Juwa, Wilder Farias and/or Beryl A. Finn**
of Woburn, MA and each is a true and lawful Attorney(s)-in-fact to sign, execute, seal, acknowledge and deliver for, and on its behalf, and as its act and deed any place within the United States, or, if the following line be filled in, only within the area therein designated

any and all bonds, recognizances, undertakings, contracts of indemnity or other writings obligatory in the nature thereof, as follows:
**Any such obligations in the United States, not to exceed Twenty Million and No/100 ($20,000,000), Dollars in any single instance**
And said companies hereby ratify and confirm all and whatsoever said Attorney(s)-in-fact may lawfully do in the premises by virtue of these presents.
These appointments are made under and by authority of the following Resolution passed by the Board of Directors of said Companies which resolutions are still in effect:

> "RESOLVED, That the President or any Vice President, in conjunction with any Assistant Vice President, be and they are hereby authorized and empowered to appoint Attorneys-in-fact of the Company, in its name and as its acts, to execute and acknowledge for and on its behalf as Surety any and all bonds, recognizances, contracts of indemnity, waivers of citation and all other writings obligatory in the nature thereof, with power to attach thereto the seal of the Company. Any such writings so executed by such Attorneys-in-fact shall be as binding upon the Company as if they had been duly executed and acknowledged by the regularly elected officers of the Company in their own proper persons." (Adopted October 7, 1981 - The Hanover Insurance Company; Adopted April 14, 1982 – Massachusetts Bay Insurance Company; Adopted September 7,2001 - Citizens Insurance Company of America)

IN WITNESS WHEREOF, THE HANOVER INSURANCE COMPANY, MASSACHUSETTS BAY INSURANCE COMPANY and CITIZENS INSURANCE COMPANY OF AMERICA have caused these presents to be sealed with their respective corporate seals, duly attested by a Vice President and an Assistant Vice President, this 29th day of June, 2004.

(Seals: 1972; 1924; SEAL 1974)

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

[signature]
*Richard M. Van Steenburgh, Vice President*

[signature]
*Ronald Rotland, Assistant Vice President*

THE COMMONWEALTH OF MASSACHUSETTS)
COUNTY OF WORCESTER ) ss.

On this 29th day of June , 2004, before me came the above named Vice President and Assistant Vice President of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, to me personally known to be the individuals and officers described herein, and acknowledged that the seals affixed to the preceding instrument are the corporate seals of The Hanover Insurance Company Massachusetts Bay Insurance Company and Citizens Insurance Company of America, respectively, and that the said corporate seals and their signatures as officers were duly affixed and subscribed to said instrument by the authority and direction of said Corporations.

[signature]
*Barbara A. Garlick, Notary Public*
My Commission Expires November 26, 2004

I, the undersigned Assistant Vice President of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, hereby certify that the above and foregoing is a full, true and correct copy of the Original Power of Attorney issued by said Companies, and do hereby further certify that the said Powers of Attorney are still in force and effect.

This Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America.

> "RESOLVED, That any and all Powers of Attorney and Certified Copies of such Powers of Attorney and certification in respect thereto, granted and executed by the President or any Vice President in conjunction with any Assistant Vice President of the Company, shall be binding on the Company to the same extent as if all signatures therein were manually affixed, even though one or more of any such signatures thereon may be facsimile." (Adopted October 7, 1981 - The Hanover Insurance Company; Adopted April 14, 1982 Massachusetts Bay Insurance Company; Adopted September 7,2001 - Citizens Insurance Company of America)

GIVEN under my hand and the seals of said Companies, at Worcester, Massachusetts, this 12th day of May 20 05

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

[signature]
*Charles T. Wells, Assistant Vice President*

**Certified Copy Void Without Allmerica Financial Watermark**

# EXHIBIT B

**ALL SALES WILL BE SUBJECT TO THE FOLLOWING TERMS**

RETURNED MATERIAL: When orders have been filled as specified, no goods may be returned by purchaser, nor will any credit be allowed, unless written consent has first been obtained from a representative of Vellano Bros., Inc. and/or A. J. Vel., Ltd. (hereinafter referred to as the Companies). When so obtained, the Companies' present policy, subject to change without further notice, is to accept returned material if it, in their sole discretion, finds such material to be standard stock and in good condition. Such credit, in the Companies' sole discretion, shall be the invoice price less twenty-five (25) percent on accepted material, less all shipping and handling charges. In all other cases, the credit, in the sole determined by the Companies shall be the scrap value of the goods, less shipping and handling charges.

MANUFACTURERS WARRANTY: Goods sold by the Companies are covered by the manufacturer's warranty and are covered only to the extent of the manufacturer's warranty. This manufacturer's warranty which is given expressly and in lieu of all other warranties, expressed or implied, of merchantability and fitness for particular purpose, constitutes the only warranty made by he Companies and provided to purchaser.

TRUST FUND AND JOB BILLING: The Companies' policy is to rely upon the trust fund provisions of Federal and State laws requiring that contractors receiving payments on jobs use such funds to pay their suppliers. The Companies will, therefore, require information identifying each job, so that separate bills can be rendered for each project.

SERVICE CHARGE: A service charge of 1-1/2% per month (18% per year) will be billed to your account on all invoices thirty (30) days past due.

TERMS OF PAYMENT: Terms are net thirty (30) days from invoice date. The Companies reserve the right to demand payment in full with all accrued service charges at any time after the first service charge has accrued. PURCHASER AGREES TO PAY COMPANIES' ATTORNEY'S FEES TOGETHER WITH ALL COSTS AND DISBURSEMENTS INCURRED IF THE ACCOUNT IS PLACED WITH AN ATTORNEY FOR COLLECTION.

This agreement will be governed by, construed and enforced in accordance with Federal Law and the Laws of the State of New York. Credit has been provided Purchaser in the State of New York. Purchasers hereby waives the right to a jury trial in any action or proceeding brought by either party against the other in the enforcement of this agreement.

The undersigned understands that the information provided in this application is being submitted for the purpose of obtaining credit from the Companies and hereby authorizes the investigation of this information. The Purchaser also authorizes the Companies or their representatives to utilize this document as authority and written consent to obtain credit history from third parties now and at any time in the future while the account is active. If the Purchaser utilizes the Companies for a credit reference, the Purchaser hereby authorizes and consents to the Companies providing said information to any third party as requested.

The undersigned thoroughly and completely understands and agrees to the above terms and conditions of credit with the Companies and is duly authorized by the customer to execute this document and bind customer to Companies' terms.

Anthony Boscia Jr.
Name of Customer

By: [signature] President
Signature and Title

DATE 1/20/04

# EXHIBIT C

# THE McCARTHY LAW FIRM

Robert F. McCarthy

P.O. Box 11-383
Albany, New York 12211
Phone (518) 785-3841
Facsimile (518) 785-0125

March 3, 2006

CERTIFIED MAIL

Earth Tech, Inc.
85 Branch Street
Pawtucket, RI 02860

| | | |
|---|---|---|
| Re: | Owner- | O. Ahlberg & Sons, Inc. |
| | Contractor- | South Shore Utility Contractors, Inc. |
| | Claimant- | Vellano Bros., Inc. |
| | Project- | Pawtucket Water Treatment Facility Package No. 2A |
| | Bond No.- | BCN 1742235 |

Dear Sir:

Please be advised that I have been retained by and represent Vellano Bros., Inc., in the above matter. My client provided South Shore Utility Contractors, Inc. goods and services that were utilized in the above project. Vellano has not been paid for the goods and services and currently is owed Seven Hundred Fifty-Five Thousand Seven Hundred Twenty-Five 01/00 dollars ($755,725.01).

Accordingly, Vellano hereby makes a claim in the above amount against the Labor and Material Bond issued for the project. Please advise as to what documentation will be needed to help substantiate my client's claim and I will forward the same.

Thank you in advance for your cooperation in this matter.

Very truly yours,

R F McCarthy

Robert F. McCarthy

CC: Hanover Insurance Co.
South Shore
O . Ahlberg & Sons

# THE McCARTHY LAW FIRM

Robert F. McCarthy

P.O. Box 11-383
Albany, New York 12211
Phone (518) 785-3841
Facsimile (518) 785-0125

March 3, 2006

CERTIFIED MAIL

O. Ahlberg & Sons, Inc.
48 Molter Street
Cranston, RI 02920

| | | |
|---|---|---|
| Re: | Owner- | O. Ahlberg & Sons, Inc. |
| | Contractor- | South Shore Utility Contractors, Inc. |
| | Claimant- | Vellano Bros., Inc. |
| | Project- | Pawtucket Water Treatment Facility Package No. 2A |
| | Bond No.- | BCN 1742235 |

Dear Sir:

Please be advised that I have been retained by and represent Vellano Bros., Inc., in the above matter. My client provided South Shore Utility Contractors, Inc. goods and services that were utilized in the above project. Vellano has not been paid for the goods and services and currently is owed Seven Hundred Fifty-Five Thousand Seven Hundred Twenty-Five 01/00 dollars ($755,725.01).

Accordingly, Vellano hereby makes a claim in the above amount against the Labor and Material Bond issued for the project. Please advise as to what documentation will be needed to help substantiate my client's claim and I will forward the same.

Thank you in advance for your cooperation in this matter.

Very truly yours,

R F McCarthy

Robert F. McCarthy

CC: Hanover Insurance Co.
South Shore
Earth Tech

MAR 06 2006

O.AHLBORG & SONS, INC

# THE McCARTHY LAW FIRM

Robert F. McCarthy

P.O. Box 11-383
Albany, New York 12211
Phone (518) 785-3841
Facsimile (518) 785-0125


March 3, 2006

CERTIFIED MAIL

South Shore Utility Contractors, Inc.
P.O. Box 19610
Johnston, RI 02919

| | | |
|---|---|---|
| Re: | Owner- | O. Ahlberg & Sons, Inc. |
| | Contractor- | South Shore Utility Contractors, Inc. |
| | Claimant- | Vellano Bros., Inc. |
| | Project- | Pawtucket Water Treatment Facility Package No. 2A |
| | Bond No.- | BCN 1742235 |

Dear Sir:

Please be advised that I have been retained by and represent Vellano Bros., Inc., in the above matter. My client provided South Shore Utility Contractors, Inc. goods and services that were utilized in the above project. Vellano has not been paid for the goods and services and currently is owed Seven Hundred Fifty-Five Thousand Seven Hundred Twenty-Five 01/00 dollars ($755,725.01).

Accordingly, Vellano hereby makes a claim in the above amount against the Labor and Material Bond issued for the project. Please advise as to what documentation will be needed to help substantiate my client's claim and I will forward the same.

Thank you in advance for your cooperation in this matter.

Very truly yours,

R F McCarthy

Robert F. McCarthy

CC: Hanover Insurance Co.
O. Ahlberg & Sons
Earth Tech

# THE McCARTHY LAW FIRM

Robert F. McCarthy

P.O. Box 11-383
Albany, New York 12211
Phone (518) 785-3841
Facsimile (518) 785-0125

March 3, 2006

CERTIFIED MAIL

Bond Claim Department
Hanover Insurance Company
440 Lincoln Street
Worcester, MA 01653

| | | |
|---|---|---|
| Re: | Owner- | O. Ahlberg & Sons, Inc. |
| | Contractor- | South Shore Utility Contractors, Inc. |
| | Claimant- | Vellano Bros., Inc. |
| | Project- | Pawtucket Water Treatment Facility Package No. 2A |
| | Bond No.- | BCN 1742235 |

Dear Sir:

Please be advised that I have been retained by and represent Vellano Bros., Inc., in the above matter. My client provided South Shore Utility Contractors, Inc. goods and services that were utilized in the above project. Vellano has not been paid for the goods and services and currently is owed Seven Hundred Fifty-Five Thousand Seven Hundred Twenty-Five 01/00 dollars ($755,725.01).

Your company issued the Material and Labor Payment Bond with regards to the above mentioned project. Accordingly, Vellano hereby makes a claim against said Bond in the above amount. Please advise as to what documentation will be needed to help substantiate my client's claim and I will forward the same.

Thank you in advance for your cooperation in this matter.

Very truly yours,

R F McCarthy

Robert F. McCarthy

CC: South Shore
O. Ahlberg & Sons
Earth Tech

# EXHIBIT D

The Hanover Insurance Group

BOND DEPARTMENT

April 19, 2006

Robert F. McCarthy, Esq.
The McCarthy Law Firm
P.O. Box 11-383
Albany, New York 12211

**RE: Principal: South Shore Utility Contractors, Inc.**
**Obligee: O. Ahlborg & Sons, Inc.**
**Claim No.: 24315**
**Bond No.: BCN-1742235**
**Project: Pawtucket Water Treatment Facility Package No. 2A**
**Claimant: Vellano Bros., Inc.**

Dear Mr. McCarthy:

We discussed this claim last week. You informed me that the Claimant was pulling together the requested delivery tickets, and that it may take some time because a third party carrier may have some of those records. Hanover will await receipt of those tickets or other proof of delivery.

As we discussed, our Principal has raised an issue concerning your client's application of certain payments on Hanover-bonded projects to other bonded or unbonded obligations. We anticipate receiving a position paper from our Principal's counsel on this issue shortly.

In the meantime, I requested a full statement of account demonstrating all invoices and all payments to date for piping materials the Claimant allegedly supplied our Principal on all bonded and unbonded projects to date. The statement of account should demonstrate to which projects each invoice and payment applies. Hanover would also like to see copies of all actual invoices to which the statement of account corresponds in order to verify the statement's accuracy.

You also mentioned that the Claimant may have sent correspondence to our Principal concerning the manner in which the Claimant was going to apply payments. Please forward copies of that correspondence as well.

Lastly, you informed me that the Claimant may have been in the process of making demand upon at least two other sureties on bonded projects. We would appreciate your providing us with copies of the demands made upon the other sureties.

Because of the significant dollar amount at stake here, Hanover is willing to engage its own accountant to review your client's records at its place of business in an effort to more fully understand the situation. This would likely expedite our investigation and final determination of the claim and would save your client some time and expense in presenting its claim. Please let me know if such access would be granted and I can make the appropriate arrangements.

Please be advised that at this time, Hanover possesses insufficient documentation with which to make a final determination on this claim. Therefore, please consider this letter to be a formal denial of the claim under Paragraph 6 of the Payment Bond, for present purposes. Pending receipt of the requested documentation and/or a review of the documentation by our accountant, and the anticipated receipt of a position paper from our Principal's counsel, Hanover reserves the right to make a final determination of the claim at a later date.

This correspondence and all prior or subsequent communication and/or investigation by Hanover, are made with the express reservation of all rights and defenses that The Hanover Insurance Group or South shore Utility Contractors, Inc. has or may have under the terms of the bond, applicable contract documents or applicable law. This reservation includes, without limitation, defenses that may be available under any applicable notice and suit limitaiton provisions under the bond or statute.

Sincerely,
The Hanover Insurance Group

Joseph P. Quinn
Bond Claim Counsel
Bond Claim Department
Phone: (508) 855-4873